IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-512-D

| | | |
|---|---|---|
| TIMOTHY LEE EVANS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Timothy Lee Evans, Sr. ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 18. Both filed memoranda in support of their respective motions. D.E. 17, 19. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* D.E. 20. For the reasons set forth below, it will be recommended that the Commissioner's motion be granted, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## BACKGROUND

## I.    CASE HISTORY

Plaintiff filed applications for DIB and SSI on 22 August 2012, alleging a disability onset date of 1 April 2010.  Transcript of Proceedings ("Tr.") 11.  The applications were denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 11.  On 18 March 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified.  Tr. 112-41.  The ALJ issued a decision denying plaintiff's claim on 29 May 2014.  Tr. 11-20.

Plaintiff timely requested review by the Appeals Council.  Tr. 111.  Plaintiff submitted numerous medical records to the Appeals Council for the first time.  *See* Tr. 25-110; 622-80. On 12 September 2015, the Appeals Council admitted a portion of the records (Tr. 622-80), which cover the period 5 June 2013 to 2 June 2014 (Tr. 2, 6); did not admit the remaining portion (Tr. 25-110), which cover the period 13 June 2014 to 29 April 2015 and the Appeals Council found to relate to a period later than that at issue (Tr. 2); and denied the request for review (Tr. 1).  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  On 30 September 2015, plaintiff commenced this proceeding for judicial review, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Am. IFP Mot. (D.E. 4); Order Allowing Am. IFP Mot. (D.E. 5); Compl. (D.E. 6).

## II.   STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1).

must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

## III.  FINDINGS OF THE ALJ

Plaintiff was 42 years old on the alleged onset date of disability and 45 years old on the date of the hearing. *See, e.g.*, Tr. 19 ¶ 7.  The ALJ found that plaintiff has at least a high school education (Tr. 19 ¶ 8) and past relevant work as a retail store manager, automobile service station manager, and automobile mechanic (Tr. 19 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.  Tr. 13 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  coronary artery disease, diabetes mellitus, degenerative disc disease, and obesity. Tr. 13 ¶ 3.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings.  Tr. 14 ¶ 4.

---

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

The ALJ next determined that plaintiff had the RFC to perform light work subject to various limitations:

> [T]he claimant has the [RFC] to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can occasionally lift, carry, push, and pull up to 20 pounds, frequently lift, carry, push, and pull up to 10 pounds as well as stand/walk and sit about six hours each in an eight-hour workday. He can never climb ladders/ropes/scaffolds and can occasionally stoop. The claimant can frequently climb ramps/stairs, balance, kneel, crouch, and crawl. He cannot reach overhead with both upper extremities or be exposed to hazards. The claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.

Tr. 14 ¶ 5; *see* 20 C.F.R. §§ 404.1567(b) (defining light work); 416.967(b) (same).[5]

Based on her determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 19 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of weight tester, cuff folder, and dowel inspector.[6] Tr. 19-20 ¶ 10. The ALJ therefore concluded that plaintiff was not disabled from the alleged onset date, 1 April 2010, through the date of her decision, 29 May 2014. Tr. 20 ¶ 11.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See*

---

[5] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

[6] In the hypothetical to the vocational expert that elicited this testimony, the ALJ posited an individual who was limited to only occasionally climbing stairs and ramps, balancing, kneeling, crouching, and crawling (*see* Tr. 136-37), whereas in her RFC determination the ALJ found plaintiff limited to frequently performing such activities (*see* Tr. 14 ¶ 5). This discrepancy is harmless because the vocational expert's testimony presumed an individual more limited than the ALJ ultimately found plaintiff to be.

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and DIB and SSI awarded or, alternatively, that this case be remanded for a new hearing, on the grounds that the ALJ erred in finding that he did not satisfy Listings 1.04 and 4.04, not giving more weight to the assessment of plaintiff by consulting examining physician Gonzalo A. Fernandez, M.D., and omitting various limitations from her RFC determination. The court will address each of plaintiff's contentions below. Before doing so, however, the court will review the ALJ's credibility determination. Although plaintiff does not directly challenge the ALJ's determination that plaintiff's allegations are not fully credible, he relies upon his testimony for many of his contentions. The court therefore deems it appropriate at the outset of its analysis of the ALJ's decision to review her credibility determination. The court's analysis is based on consideration of the record as supplemented by plaintiff's submissions to the Appeals Council, both those submissions formally admitted into the record by the Appeals Council and those not formally admitted but included in the record.

**DISCUSSION**

## I.     ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A.     Applicable Legal Standards

As previously noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id*. at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id*. at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996))[7]; *see also* 20 C.F.R. §§ 404.1529, 416.929 (setting out factors in evaluation of a claimant's pain and other symptoms).

It is true, of course, that "[a] party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id*. (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595. In other words, an ALJ is not "obligated to accept the claimant's statements at face value; rather, the ALJ 'must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.'" *Hyatt v. Colvin*, No. 7:14-CV-8-D, 2015

---

[7] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case.

WL 789304, at *11 (E.D.N.C. 24 Feb. 2015) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2). Specifically, the Regulations require the ALJ to consider "all of the available evidence," which includes a claimant's history; the signs and laboratory findings (*i.e.*, objective medical evidence); statements about the effect of symptoms from the claimant, treating or nontreating sources, and other persons; and medical opinion evidence. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

### B. Analysis

After a thorough description of plaintiff's testimony and a detailed review of the medical evidence, the ALJ determined at step one that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 18 ¶ 5. However, at the second step of the credibility assessment, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 18 ¶ 5.

The ALJ summarized the reasons for her credibility determination as follows:

The above-summarized evidence shows that the claimant was diagnosed with coronary artery disease; diabetes mellitus; degenerative disc disease; and obesity. The claimant reported that he was diagnosed with both diabetes and coronary artery disease around 2002. Records have consistently shown that the claimant did not follow a diabetic diet; he rarely exercised, did not consistently test his blood sugar levels at home, and did not consistently take his insulin when it was added to his medication regimen. He acknowledged that he had never been to see an endocrinologist and that his last eye examination was when he was in his 20's. The claimant complained of some foot and hand pain and numbness that were thought to be neuropathy. However, there is no indication that he ever followed up with anyone to receive a specific diagnosis.

The claimant underwent a cardiac catheterization and a stress echocardiogram after experiencing some shortness of breath upon exertion. It was noted that he had two totally occluded vessels; however, it was determined that he was not a good candidate for intervention because he had no significant valve disease. It was determined that he would be best managed with medication. The claimant only acknowledged occasional chest discomfort and admitted to having a 30-year

history of smoking and continuing to smoke at least a pack every few days. His angina pattern was noted to be stable and he was encouraged to stop smoking and start exercising.

The claimant complained of chronic low back pain for the last several years that he stated was worsened when a car rolled over his legs. The claimant testified that he was unable to stand, walk, or sit for prolonged periods of time and that he had trouble climbing steps, yet he acknowledged being able to take care of and pick up his 40-pound three-year-old. It was noted that the claimant had not undergone any recent x-rays or MRIs or been to any kind of specialist, physical therapy, or had any epidural steroid injections for his back pain. In fact, it appears that the claimant has not had any significant treatment for his back at all. His physical examinations were nearly normal and although his gait was slow, he did not require the use of an assistive device.

Records showed that the claimant was diagnosed as being obese on more than one occasion, which undoubtedly has not only affected, but exacerbated his diabetes, coronary artery disease, and degenerative disc disease. The claimant testified that he has lost a significant amount of weight, but he remains in the morbidly obese category and there is no evidence that he has tried to lose any more weight through any means of diet, exercise, or surgery. Also [] affecting the claimant's credibility is the fact that he acknowledged that he was working for several years under the table and avoiding paying taxes. All of these facts suggest that the claimant's impairments might not be as severe as initially alleged and that he is capable of obtaining and maintaining gainful employment.

Tr. 17-18 ¶ 5. Substantial evidence supports the ALJ's determination, including evidence discussed below in connection with plaintiff's contentions.

As can be seen, the ALJ took into account in her credibility determination plaintiff's failure to seek medical care. He testified that he is currently without insurance or income to pay for care. Tr. 124. The court is aware that a claimant cannot be penalized for not seeking care when he lacks the ability to pay for it. *See Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Plaintiff does not contend that the ALJ ran afoul of this prohibition, although she does mention the lack of imaging of plaintiff in connection with the ALJ's determination on Listing 1.04, as discussed below. The court finds that the ALJ did not violate this prohibition.

Among other reasons, the periods over which plaintiff did not obtain care include times when the record shows he did have income. *See*, *e.g.*, Tr. 368 (work history report). The record also shows that plaintiff did have some access to health care during at least portions of the alleged period of disability. *See*, *e.g.*, Tr. 581 (plaintiff's report to Dr. Fernandez on 19 Nov. 2012 that "[c]urrently, he follows with his primary care doctor for his diabetes and sees him every 3 months"). In addition, the record substantiates that, as the ALJ found, plaintiff has an extended history of failure to follow physicians' instructions and to otherwise tend to his health care irrespective of ability to pay. Therefore, even assuming lack of income, that fact might not account for his not seeking care. Moreover, as the ALJ notes, he is not a reliable reporter as to when he has income, having failed to report on his taxes income he had received under the table for several years. *See* Tr. 121-22. Further, plaintiff's not seeking medical care is only one of numerous factors underlying the ALJ's credibility determination. Substantial evidence would support this determination even if the findings regarding his failure to seek treatment were disregarded. The court concludes that the ALJ's credibility determination was proper.

## II.     ALJ'S LISTING DETERMINATIONS

### A.     Listing Requirements

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating

that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria), 416.926(a) (same). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted*, Ord. (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

**B.      Listing 1.04**

Listing 1.04 relates to spinal disorders.  It provides:

> 1.04      *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root (including
> the cauda equina) or the spinal cord.  With:
>
> A.      Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine); or
>
> B.      Spinal arachnoiditis, confirmed by an operative note or pathology report
> of tissue biopsy, or by appropriate medically acceptable imaging, manifested by
> severe burning or painful dysesthesia, resulting in the need for changes in position
> or posture more than once every 2 hours; or
>
> C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by
> findings on appropriate medically acceptable imaging, manifested by chronic
> nonradicular pain and weakness, and resulting in inability to ambulate effectively,
> as defined in 1.00B2b.

Listing 1.04.  "Inability to ambulate effectively" generally means "having insufficient lower

extremity functioning . . . to permit independent ambulation without the use of a hand-held

assistive device(s) that limits the functioning of both upper extremities."  Listing 1.00B2b(1).

Thus, to satisfy Listing 1.04, a claimant must satisfy the diagnostic definition and the criteria in

at least one of paragraphs A, B, or C.

After making the general finding that plaintiff's impairments do not meet or medically

equal any listing, the ALJ found that "[t]he record does not show that the claimant has a spinal

disorder characterized by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis,

as required by Medical Listing 1.04," referring to paragraphs A, B, and C, respectively.  Tr. 14 ¶

4.  The ALJ does not address the diagnostic definition in Listing 1.04.  Plaintiff does not specify

which paragraph of this listing he contends he satisfies, although in summarizing the listing he

refers to the criteria of only paragraphs A and C. In any event, substantial evidence supports the ALJ's determination that his impairments do not satisfy the criteria in any of the three paragraphs.

As to the paragraph A criteria, the medical records do not appear to contain any diagnosis of plaintiff for nerve root compression. *See* Listing 1.04A. Nor has plaintiff alleged the existence of any such diagnosis. He therefore does not meet Listing 1.04A. Plaintiff has also failed to cite to evidence demonstrating that his limitations are equivalent in severity to the criteria of Listing 1.04A.

With respect to the paragraph B criteria, the medical records also do not appear to contain any diagnosis of plaintiff for arachnoiditis. *See* Listing 1.04B. Again, plaintiff did not identify any such diagnosis in the record. As with Listing 1.04A, he does not cite evidence showing that his limitations are equivalent to the criteria specified in Listing 1.04B.

Regarding the paragraph C criteria, there also appears to be no diagnosis for, and plaintiff does not allege that he has, spinal stenosis. As to plaintiff's ability to ambulate, there is no evidence that he used or was prescribed a cane or other assistive device. Indeed, in a work history report dated 13 December 2013, plaintiff reported that he did not use a cane, crutches, or a walker and had not been prescribed any of them. Tr. 369. In addition, Dr. Fernandez stated in his report on his examination of plaintiff that "[t]here are no assistive devices." Tr. 585.

Plaintiff argues that his back condition meets or medically equals Listing 1.04 on the basis of his testimony that he can sit for only 15 to 20 minutes at a time, stand for only 15 to 25 minutes at a time, and walk for only 10 to 15 minutes at a time. Tr. 125-26. But, as discussed, the ALJ properly found plaintiff's testimony not fully credible. Tr. 18 ¶ 5.

Specific evidence supporting the ALJ's rejection of plaintiff's testimony regarding the need to take breaks includes the 7 January 2013 assessment of nonexamining state agency consulting physician E. Woods, M.S., M.D. that did not find plaintiff to have the alleged need to take breaks. Tr. 168-71, 182-85. The ALJ gave Dr. Woods' opinions great weight subject to one exception not relevant here.[8] Tr. 18 ¶ 5. In addition, as discussed below, although Dr. Fernandez found that plaintiff required frequent breaks when sitting, standing, or walking, the ALJ properly gave this opinion little weight because of its lack of specificity and a justification. *See* Tr. 17 ¶ 5; 585.

Plaintiff also argues that he was unable to afford the imaging that can be used to confirm spinal arachnoiditis and that must be used to establish lumbar spinal stenosis, citing his testimony to that effect. Tr. 125; *see also* Listing 1.04A, B. The Regulations, however, contemplate the situation in which a claimant's lack of treatment prevents him from showing that he meets a listing. "Even though an individual who does not receive treatment may not be able to show an impairment that meets the criteria of one of the musculoskeletal listings, the individual may have an impairment(s) equivalent in severity to one of the listed impairments or be disabled based on consideration of his or her residual functional capacity (RFC) and age, education and work experience." Listing 1.04H3. Therefore, even if plaintiff's testimony that he could not afford imaging were credited, it would not establish that the ALJ's determinations on Listings 1.04B and 1.04C were improper. Moreover, the ALJ's decision makes clear that, as this regulation envisions, the ALJ did consider whether plaintiff's back impairments were medically equivalent to Listing 1.04 and did consider them in determining plaintiff's RFC. *See* Tr. 15 ¶ 5; 16 ¶ 5; 18 ¶ 5.

---

[8] The exception is that the ALJ restricted plaintiff from any climbing of ladders, ropes, and scaffolds, while Dr. Woods limited him to such climbing on an occasional basis. Tr. 18 ¶ 5, 169, 183.

Plaintiff has therefore failed to demonstrate that the ALJ erred in her determination that he did not satisfy the paragraph A, B, and C criteria of Listing 1.04. The court accordingly rejects plaintiff's challenge to the ALJ's determination on Listing 1.04.

## C.     Listing 4.04

Listing 4.04 relates to ischemic heart disease, which is narrowing or obstruction of coronary arteries interfering with blood flow to heart muscle. Listing 4.00E1. It requires symptoms due to myocardial ischemia (*i.e.*, reduced blood flow to the heart)[9] while on a regimen of prescribed treatment with one of the following, as set out in paragraphs A, B, and C, respectively: (a) a sign- or symptom-limited exercise tolerance test demonstrating at least one of four specified manifestations at a workload equivalent to 5 METS (*i.e.*, metabolic equivalent of tasks) or less (Listing 4.04A); (b) three separate ischemic episodes within a consecutive 12-month period, each requiring revascularization or not amenable to revascularization (Listing 4.04B); or (c) coronary artery disease (i) demonstrated by angiography or other appropriate medically acceptable imaging and, in the absence of a timely exercise tolerance test or normal drug-induced stress test, by the conclusion of a medical consultant that exercise tolerance testing would present a significant risk to the individual, (ii) accompanied by angiographic evidence showing specified degrees of vessel narrowing, and (iii) resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living (Listing 4.04C). Thus, Listing 4.04 is satisfied if the diagnostic definition is satisfied along with the criteria in any of paragraphs A, B, or C.

---

[9] *See generally* Myocardial Ischemia, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/myocardial-ischemia/basics/definition/con-20035096 (last visited 21 Dec. 2016).

The ALJ's determination that plaintiff did not satisfy any Listings encompasses, of course, the criteria in all three paragraphs of Listing 4.04. The ALJ explained her determination with respect to only paragraph C, stating:

> The claimant's coronary artery disease has neither been manifested by angiography or other appropriate, medically acceptable imagining; nor in the absence of a timely exercise tolerance test or normal drug-induced stress test, has a medical consultant concluded performance of exercise tolerance testing would present a significant risk to the individual based upon review of an angiographic showing coronary artery narrowing, resulting in very serious limitations in the ability to independently initiate, sustain or complete activities of daily living as required to meet Listing 4.04C.

Tr. 14 ¶ 4.

Substantial evidence supports the ALJ's determination regarding Listing 4.04, including specifically paragraph C. Such evidence includes that reviewed by the ALJ in her decision substantiating that plaintiff's coronary artery disease is not disabling. She stated:

> During a stress echocardiogram in March of 2012, the claimant was diagnosed with coronary artery disease with two totally occluded vessels. However, the claimant was not felt to be a good candidate for intervention because he had no significant valve disease. . . . . In June of 2012, the claimant indicated that he only had occasional chest discomfort. He reported that he had self-discontinued all of his medications several weeks prior due to having a vasectomy, but he denied any PND, orthopnea,[10] or lower extremity edema. The claimant admitted that he continued to smoke and had not engaged in any regular exercise (Ex. 3F).
>
> Physical examinations showed that his chest was clear to auscultation with a regular S1 and S2. There were no murmurs or gallops. It was noted that he would continue to be managed with medication and that he appeared to have a stable angina pattern. The claimant was encouraged to stop smoking and start exercising (Ex. 3F).

Tr. 16 ¶ 5.

---

[10] PND or paroxysmal nocturnal dyspnea is the sensation of shortness of breath that awakens a person. Orthopnea is the sensation of breathlessness when in the recumbent position. Vaskar Mukerji, *Clinical Methods: The History, Physical, and Laboratory Examinations*, ch. 11: Dyspnea, Orthopnea, and Paroxysmal Nocturnal Dyspnea, def. (3d ed. 1990), https://www.ncbi nlm nih.gov/books/NBK213/.

In challenging the ALJ's determination, plaintiff points to his diagnosis with two totally occluded vessels in March 2012. But this fact alone does not satisfy Listing 4.04C; there are additional criteria to satisfy. Further, as indicated, the ALJ's decision makes clear that she considered this diagnosis in her assessment of plaintiff's coronary artery disease.

Plaintiff also cites to the determination by consulting examining psychiatrist Assad Meymandi, M.D., Ph.D., in the report on his 18 December 2012 evaluation of plaintiff that he "may have some anxiety as the result of his recent cardiac condition." Tr. 592. Not only is this finding indeterminate—plaintiff "*may* have *some* anxiety"—but Dr. Meymandi did not find plaintiff to have any mental impairments that would impose work-related limitations. Tr. 13-14 ¶ 3 (ALJ's recitation of this opinion); 593 (Dr. Meymandi's statement that plaintiff "is certainly capable of making occupational adjustment"). Similarly, nonexamining state agency consulting psychologist Tovah M. Wax, Ph.D. found in her 10 January 2013 assessment of plaintiff that he had no severe mental impairments (Tr. 166-67, 180-81), an assessment to which the ALJ gave great weight as consistent with Dr. Meymandi's evaluation (Tr. 14 ¶ 3). In any event, plaintiff's psychological response to his coronary artery disease is outside the scope of Listing 4.04.

Lastly, plaintiff points to a one-page form signed by cardiologist Lawrence Liao, M.D. Tr. 81. Plaintiff submitted this form for the first time to the Appeals Council. In the form, Dr. Liao indicated that plaintiff had Class III cardiac functional capacity, signifying that he had cardiac disease "resulting in marked limitation of physical activity." Tr. 81. But this statement is dated 29 April 2015,[11] almost a year after the end of the period of alleged disability at issue, 29 May 2014. The statement does not indicate that it applies to any period other than the date it was issued. Plaintiff has not shown that this determination is relevant to the period at issue.

---

[11] This is the date appearing at the top of the form. The date beneath Dr. Liao's signature is 6 April 2015.

Moreover, the weight properly accordable to Dr. Liao's determination is limited by the fact that it is unsupported by any evidence or other explanation. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Dr. Liao simply circled which of the four functional levels listed and described on the form he apparently deemed applicable.

The court concludes that the ALJ's determination regarding Listing 4.04 is proper. It accordingly rejects plaintiff's challenge to this determination.

## III. ALJ'S ASSESSMENT OF DR. FERNANDEZ'S OPINION

### A. Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be

given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources and explanation of the weight given such opinions apply to nonexamining sources. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinion of a treating source than to the opinion of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under appropriate circumstances, however, the opinions of a nonexamining source may be given more weight than those of a treating source. *See* Soc. Sec. R. 96–6p, 1996 WL 374180, at *3 (2 July 1996).

**B.     Analysis**

As noted, consulting physician Dr. Fernandez performed an examination of plaintiff on 19 November 2012.    *See* Tr. 581-85.    The ALJ described Dr. Fernandez's report on the examination at length in her decision as follows:

> In November of 2012, the claimant attended a consultative examination with Gonzalo Fernandez, M.D.  The claimant indicated that he was currently checking his blood sugar levels twice a day and following up with his primary care doctor every three months.  He acknowledged that he had never been seen by an endocrinologist and he denied a history of heart attacks, strokes, kidney disease or eye disease.  The claimant admitted that his last eye examination was when he was in his 20's.  He stated that he currently smoked a pack of cigarettes every three days and had been smoking for the past 30 years.  The claimant had never been hospitalized for his diabetes.  He stated that in regards to his coronary artery disease, he was never told that he had hypertension and other than one emergency room visit, the claimant had never been hospitalized for this condition either (Ex. 4F).
>
> The claimant complained of chronic back pain for the last two to three years that he felt was getting worse.  He stated that he had an incident where he tried to help a friend with fixing his car and while he was underneath the car, it rolled over his legs.  The claimant reported that ever since that incident, his back pain had been worse although he did not suffer from any fractures.  He indicated that in 1992, he was involved in two motor vehicle accidents.  The claimant reported that he had back pain every day and that it was mainly in his low back and sometimes it radiated upward to both of his shoulders.  He denied any radicular type of pain or parathesias.  The claimant had never seen an orthopedic doctor or any kind of specialist for the pain nor had he undergone any recent x-rays or MRIs.  He stated that the pain was better with extra strength Tylenol in large doses and worse with moving, bending, and walking.  The claimant acknowledged that he had a two-year-old son and that he was finding it more difficult to interact and play with him.  He had never been to physical therapy or had any epidural steroid injections (Ex. 4F).
>
> Upon physical examination, it was noted that he was able to walk down the hall, but did so slowly with a mild right-sided limp.  He needed some assistance getting off and on the examination table and he complained of some low back pain.  The claimant leaned forward in his chair, which he stated was for comfort.  He did not appear to be in any acute distress.  His blood pressure was 132/76 and his extremities showed no cyanosis, cords, or edema.  He had some tenderness about his mid back along the right and left paravertebral muscles and into his low back mainly along the sides and not the midline. The claimant's Romberg testing was negative and he was able to tandem walk, walk on his heels, and walk on his

tiptoes. He did not require the use of an assistive device. His back flexion was from 0 to 50 degrees with a straight leg raise from 0 to 70 degrees bilaterally in the sitting position (Ex. 4F).

Dr. Fernandez determined that the claimant could be expected to stand and walk for two to four hours with frequent breaks and sit for four hours with frequent breaks. There might be some postural limitations to bending, stooping, and crouching due to his chronic low back pain. There were no manipulative limitations to reaching, handling, feeling, grasping, and fingering nor were there any relevant visual, workplace, or environmental limitations. He might have some communicative limitations due to his complaints of poor memory and focus (Ex. 4F).

Tr. 16-17 ¶ 5.

The ALJ then stated that she gave little weight to Dr. Fernandez's "opinion":

This opinion is being given little weight because although the doctor was able to personally examine the claimant, he was not specific enough in his limitations of the claimant needing to have frequent breaks nor did he give a justification for the claimant needing frequent breaks.

Tr. 17 ¶ 5. The court deems the opinion the ALJ was addressing to be the opinion that plaintiff needed frequent breaks because her explanation relates to only that opinion.

The reasons cited by the ALJ for attributing little weight to this opinion are proper and supported by substantial evidence. Dr. Fernandez did not, in fact, specify the frequency with which plaintiff would need breaks or give reasons for this opinion. Plaintiff does not directly address the ALJ's assessment of this opinion.

Plaintiff does argue that the ALJ should have given substantial weight to Dr. Fernandez's determinations regarding plaintiff's purported postural and communicative limitations. He reads the ALJ's decision as stating that she gave them little weight. As noted, though, the court finds that the ALJ's express attribution of little weight with respect to Dr. Fernandez's assessment applied solely to his opinion regarding plaintiff's purported need to take breaks. The ALJ did not expressly address the weight accorded Dr. Fernandez's determinations regarding plaintiff's

purported postural and communicative limitations, although it is clear from her recitation of them that she considered them. Nonetheless, the court finds no harmful error. Specifically, plaintiff has not shown that without the errors he alleges it is reasonably possible that the ALJ would have reached a different outcome on the issue of disability. *See*, *e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7, 7 (M.D.N.C. 14 Aug. 2013); *Presnell v. Colvin*, No. 1:12–CV–299–FDW, 2013 WL 4079214, at *6 (W.D.N.C. 13 Aug. 2013); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that an error is harmless when, among other circumstances, the ALJ would have reached the same result absent the error).

One reason is that these determinations by Dr. Fernandez are not expressed as definitive judgments regarding plaintiff's purported impairments. Dr. Fernandez stated, in his own words, merely that "[t]here *may be* postural limitations to bending, stooping, crouching limited by his chronic low back pain" and that "[t]here *may be* communicative limitations limited by his complaints of poor memory and focus issues." Tr. 585 (emphasis added). Thus, Dr. Fernandez did not find that plaintiff actually had these limitations, but only that it was a possibility that he did. Dr. Fernandez does express other determinations in definitive terms (*e.g.*, "There were no manipulative limitations . . . ."), substantiating that he intended the uncertainty expressed in his determinations on postural and communicative limitations. In addition, Dr. Fernandez did not specify the extent of these possible postural limitations. Given these circumstances, it is unclear what an express attribution of weight to these determinations, particularly the attribution of significant weight as plaintiff advocates, would have signified or how it would have facilitated court review of the ALJ's decision.

Ultimately, of course, the ALJ did include in her RFC determination postural limitations of the type Dr. Fernandez mentioned—namely, limitations of plaintiff to only occasional stooping (*i.e.*, bending at the waist) and frequent crouching (*i.e.*, bending at the knees) and crawling. Tr. 14 ¶ 5. Substantial evidence supports the inclusion of these postural limitations, among it, the opinion of nonexamining state agency consulting physician Dr. Woods that plaintiff had such limitations. *See* Tr. 169, 183.

The ALJ did not include any communicative limitations in her RFC determination. Dr. Fernandez grounded his determination regarding communicative limitations on plaintiff's purported poor memory and focus issues. Dr. Fernandez is not a psychiatrist and this determination is arguably outside the scope of his area of specialization. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). In any event, substantial evidence supports the ALJ's omission of communicative limitations from her RFC determination. Such evidence includes the psychological evaluation of plaintiff by Dr. Meymandi, which noted no such limitations and found specifically that plaintiff's memory was intact. Tr. 592, 593. Additional supporting evidence is the assessment by Dr. Woods, which also found no communicative limitations. Tr. 170, 184.

Finding that the ALJ's handling of Dr. Fernandez's assessment contains no harmful error, the court therefore rejects plaintiff's challenge to this portion of the ALJ's decision.

## IV.  ALJ'S RFC DETERMINATION

Plaintiff argues that the ALJ failed to include in her RFC determination limitations that preclude him from performing any work. The court disagrees.

One limitation plaintiff cites is his purported need to change position about every 20 minutes. In response to a hypothetical, the vocational expert testified that this limitation would

preclude plaintiff from performing any work. Tr. 137-38. Plaintiff claims he has this limitation on the basis of his own testimony and Dr. Fernandez's opinion that he does. *See* Tr. 125-26; 585.

As discussed previously, however, the ALJ properly found plaintiff's testimony regarding the severity and limiting effects of his impairments not fully credible and discounted this opinion by Dr. Fernandez. As also discussed, the ALJ's determination that plaintiff does not have this alleged limitation is otherwise supported by substantial evidence. The ALJ therefore did not err by excluding this limitation from plaintiff's RFC.

The other principal limitation plaintiff argues the ALJ wrongfully omitted from her RFC determination is his purported need to be off task from work more than 20 percent of the workday due to drowsiness or pain. The vocational expert testified that such a limitation would preclude all work by plaintiff. Tr. 139. Again, plaintiff bases this purported limitation on his own testimony. *See* Tr. 129.

As with the purported need to change position, the ALJ did not err in rejecting this testimony. The ALJ's exclusion of this alleged limitation is otherwise supported by substantial evidence.

Plaintiff cites to other purported limitations not included in the ALJ's RFC determination, but again relies on his own testimony regarding the existence and severity of these limitations. For the same reasons discussed with respect to plaintiff's purported limitations relating to breaks and off-task time, the ALJ did not err in her handling of these additional alleged limitations in determining plaintiff's RFC. For this and the other reasons stated, plaintiff's challenge to the ALJ's RFC determination fails.

## <u>CONCLUSION</u>

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 18) for judgment on the pleadings be GRANTED, plaintiff's motion (D.E. 16) for judgment on the pleadings be DENIED, and the Commissioner's final decision be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 4 January 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 21st day of December 2016.

James E. Gates
United States Magistrate Judge